

IN THE
TENTH COURT OF APPEALS

No. 10-14-00274-CV

CLINTON W. (BUDDY) PIKE, SR., DANIEL
L. WALKER, W. TOBIN WILSON, VHSC
CEMENT, LLC AND FEW READY MIX
CONCRETE CO.,

                                                              Appellants

 v.

TEXAS EMC MANAGEMENT, LLC, TEXAS
EMC PRODUCTS, LP AND EMC CEMENT, BV,

                                                              Appellees


From the 77th District Court
Limestone County, Texas
Trial Court No. 30,023-A


## DISSENTING OPINION


The Court resolves this appeal, which has more moving parts than a VBM, in a 63

page memorandum opinion. This would seem to indicate that it does not involve any

novel legal issues or the application of settled law to new or different facts. I respectfully

disagree with the Court's analysis and disposition of the issues, and dissent to the Court's

judgment.

No useful purpose will be accomplished by an extended dissenting opinion. I recently spent the time necessary to write such an opinion and thereby delayed the disposition of an appeal for an extended period of time. *See Tafel v. State*, Nos. 10-14-00019-CR, 10-14-00020-CR, ___ S.W.3d ___, 2016 Tex. App. LEXIS 9703 (Tex. App.—Waco Aug. 31, 2016, pet ref'd). I will not do that in this appeal. The parties are entitled to a disposition, and I will not delay the disposition as I did in *Tafel* by writing an extensive dissenting opinion. I will only make a few observations that might assist further review or allow those that follow us to dig into the issues and distinguish the holding in subsequent cases.

STANDING

I begin with the perennial issue of standing. This issue can arise in many contexts and forms and is frequently confused with capacity. The analysis of this issue in the Court's opinion is somewhat difficult to follow since it is a memorandum opinion and the very complex ownership interest of the parties, alignment of the parties, pleadings, and cross-claims was not discussed. In summary, the partners in EMC-Production (EMC-P) were EMC-Cement (EMC-C), EMC-Management (EMC-M), Walker et al., and Wilson. The standing issue has substantive implications because of the need to determine who, if anyone, has the proper interest to be the representative behind EMC-P's claims and bring suit as the partnership to recover on the claims of the partnership as distinguished from the claims of the various partners. The collateral issues cascade down from the resolution of this issue, flow through the damages analysis, and ultimately pool in the judgment.

There are claims of EMC-C and EMC-M against Walker and Wilson; thus partners vs. partners. EMC-P is also a party to the litigation whose "interest" has been "aligned," for purposes of pursuing this litigation, with EMC-C and EMC-M. Thus, the recovery on claims made by or on behalf of EMC-P will necessarily benefit all the EMC-P partners, including Walker and Wilson. But EMC-P's claim that EMC-C breached the partnership agreement, is obviously not being presented by EMC-C, but rather is being presented and pursued by Walker and Wilson. No one has suggested that EMC-P was dissolved. As noted above, EMC-P is purported to be a party to the litigation. The problem is further complicated in this proceeding because the assets of the partnership, EMC-P, were foreclosed upon. So there is a question of whether the partnership's several claims for breach of the partnership agreement, as raised by different partners, were assets of the partnership sold as part of the foreclosure.

The Court resolves the issue of standing, partially under the theory that as a partner, EMC-C is authorized to represent EMC-P, and partially upon the determination that there was no sworn denial of the ability of EMC-C to recover in the capacity that suit was brought. If there is a pleading problem due to the capacity issue, I believe it was tried by implied consent. The issue, however, does not seem to be a capacity issue because Walker and Wilson are not challenging whether EMC-C can recover in a certain capacity, but rather whether EMC-C has the necessary interest in the recovery to be the mouthpiece for EMC-P and thus, to selectively assert claims against Walker and Wilson.

To some extent, I believe the Court misapprehends the issue as briefed. Nevertheless, this is an area that cries out for guidance from the State's high court;

whether a partnership's competing interest against and between its partners allows the first partner to get to the courthouse the ability to be the representative behind the partnership's claims and thus to sue as the partnership and thereby insulate itself from its own breach of the partnership agreement, a breach which the other partners established in this proceeding. In effect, who has the necessary and proper independent interest in the outcome to pursue all of the claims of the partnership and to thus sue for all of its claims, if any, against all the various partners.

## ILLEGALITY

Next I turn to another area that could use some high court guidance; the nature of the "illegal" act that will support a conspiracy. The lynchpin of the liability of the appellants is the alleged conspiracy. The lynchpin of the conspiracy is the illegal act. In the hundreds of pages of briefing and the thousands of pages of the record, I have been unable to find the illegal act to support a conspiracy, remembering that it is not illegal to breach a contract, even if done maliciously, or to commit a common law tort. So out here in the trenches, it would be helpful to have some articulation of what acts will support a conspiracy claim that can convert an ordinary tort or breach of contract claim from one for damages caused by one's own conduct into joint and several liability for the conduct of anyone that was in the area when the "conspiracy" went down.

Guidance in this area would be particularly helpful in a case such as this where it is clear that there was a falling out between the parties that provided the idea, the parties that provided the financing, and the parties that were supposed to make the idea work in production and the marketplace. When the venture falls apart, people search for legal

solutions that are clearly not what they went into the partnership thinking or intending. One partner takes an unreasonable position never contemplated by anyone, for example that the partnership agreement requires some of the partners to provide an infinite stream of funding until PozzoSlag and CemPozz penetrate the market for cement, which is a position that is unsupported by any reasonable construction of the partnership agreement. The other partners, who think they have already put more than enough money into the business venture for it to be a success, if it is ever going to succeed, begin to look for a way to stop the financial losses of a business enterprise that will obviously never work. One party or the other may choose to breach the contract and suffer the consequences. In hindsight, it looks bad but it is not illegal and the trial court must give the appropriate guidance in the charge in the form of questions and instructions to the jury to instruct them on the law of what "illegal" conduct will support a conspiracy that may lead to joint and several liability under conspiracy claims for the actions of other parties.

## DAMAGES

And while I will not elaborate extensively on the conclusory testimony that purports to be a damages analysis which was based on no history of profitability and based on projections of earnings and growth that have no basis in reality (19% annual increase in the volume of tons of cement sold while also increasing prices 19% annually, both of which occur uninterrupted and compounded for a 10 year run), it is clear to me that Lygren had no idea what he was testifying about by his discussion of "Federal

Accounting Standards and Procedures." Accounting for the Federal Government has no application to the valuation of a privately owned business.

Moreover, after spending a good deal of time and effort in analysis of the damage model used by the plaintiffs in this case, I would hold the testimony of the "experts" are no more than unsupported conclusions with an *ipsi dixit* connection to the facts of the case. There is simply, in the words of the high court, too great of an analytical gap to support the damages awarded, much of which appears to be a double recovery for alleged damages to EMC-P, and also to EMC-C for the damage to its investment in EMC-P (especially when EMC-C purported to pull out its contribution to EMC-P which would destroy the value of EMC-P but for which EMC-C is then awarded damages, thus rewarding EMC-C's own conduct in breaching the partnership agreement as determined by the jury but not reflected in the judgment). And because you cannot retry only the issue of damages, and in the interest of justice, I would reverse the trial court's judgment and remand the entire proceeding for a new trial. Because the Court does not, I respectfully dissent.

TOM GRAY
Chief Justice

Dissenting opinion delivered and filed May 31, 2017

